NOT FOR PUBLICATION

### IN THE UNITED STATES COURT OF FEDERAL CLAIMS

_____
                                                       )
GUY RANDY WHITE HORSE,                 )
                                                       )
                         Plaintiff,              )          No. 20-1624C
                                                       )
              v.                                  )          Filed: March 30, 2021
                                                       )
THE UNITED STATES,                          )
                                                       )
                         Defendant.            )
_____)

### <u>MEMORANDUM OPINION AND ORDER</u>

*Pro se* Plaintiff, Guy Randy White Horse, filed his Complaint on November 11, 2020, seeking $49,560,000 in restitution "for physical and mental anguish from being wrongfully incarcerated for 19 years." Compl. at 4, ECF No. 1. Plaintiff's Complaint alleges causes of action under the "Bad Men" clause of the 1868 Treaty of Fort Laramie ("Fort Laramie Treaty") against various government officials and individuals, including the Assistant United States Attorney ("AUSA"), judge, forensic interviewer, and government witnesses, involved in the criminal proceedings in South Dakota that resulted in Plaintiff's incarceration. *See id.* at 2-3.

Before the Court are two motions filed by Plaintiff. On November 20, 2020, after filing his Complaint, Plaintiff filed an Application to Proceed *In Forma Pauperis* ("IFP Application"). *See* Appl. to Proceed *In Forma Pauperis*, ECF No. 2. On January 27, 2021, Plaintiff filed a Motion to Appoint Counsel. *See* Mot. to Appoint Counsel, ECF No. 11. For the reasons set forth below, the Court **DENIES** both motions.

Separately, on January 15, 2021, Defendant filed a Motion to Dismiss for Lack of Jurisdiction and Failure to State a Claim ("Motion to Dismiss") pursuant to Rules 12(b)(1) and

12(b)(6) of the Rules of the United States Court of Federal Claims ("RCFC"), to which Plaintiff has not yet filed a response. *See* Def.'s Mot. to Dismiss for Lack of Jurisdiction & Failure to State a Claim, ECF No. 9. As explained below, the Court further orders that Plaintiff's response be filed within 30 days of this Order.

### A.      Plaintiff's IFP Application Is Denied.

RCFC 77.1(c) mandates the prepayment of certain fees for filing a complaint or petition in this court. *See* RCFC 77.1(c)(3) (explaining that parties must pay all fees "in advance"); U.S. Court of Federal Claims Schedule of Fees (Dec. 1, 2020), http://www.uscfc.uscourts.gov/fee-schedule (listing $402.00 filing fee for Complaint/Petition). The expense of the filing fees, however, should not prevent indigent individuals from obtaining relief from the court. "Having access to the courts to vindicate one's legal rights is a hallmark of our judicial system." *Winsett v. McDonald*, 611 Fed. App'x 710, 714 (Fed. Cir. 2015).

28 U.S.C. § 1915(a)(1) serves as a statutory solution to the potentially prohibitive financial burden of paying the filing fees associated with initiating an action. It "permits, but does not require, a court to allow a party to proceed without paying the requisite fees if 'the person is unable to pay such fees or give security therefor.'"[1] *Chamberlain v. United States*, 655 Fed. App'x 822, 825 (Fed. Cir. 2016) (quoting § 1915(a)(1)); *see also Bryant v. United States*, 618 Fed. App'x 683, 685 (Fed. Cir. 2015) ("Proceeding *in forma pauperis* . . . is a privilege, not a right." (quoting *White v. Colorado*, 157 F.3d 1226, 1233 (10th Cir. 1998))). "[T]he threshold for a motion to proceed *in*

---

[1] The language of § 1915(a)(1) requires the submission of "an affidavit that includes a statement of all assets such prisoner possesses that the person is unable to pay such fees or give security therefor." 28 U.S.C. § 1915(a)(1). Despite the reference to "prisoner" in § 1915(a)(1), a "number of courts . . . have concluded that Congress did not intend for non-prisoners to be barred from being able to proceed *in forma pauperis* in federal court." *Brestle v. United States*, 139 Fed. Cl. 95, 102 n.6 (2018) (collecting cases). The Court finds that Plaintiff, as a non-prisoner litigant, may apply to proceed *in forma pauperis*. *See id.*

*forma pauperis* is not high." *Fiebelkorn v. United States*, 77 Fed. Cl. 59, 62 (2007).  Another judge of this court held that being "unable to pay such fees," as contemplated by § 1915(a)(1), "means that paying [the filing] fees would constitute a serious hardship on the plaintiff."  *Id.*; *see also Adkins v. E. I. DuPont de Nemours & Co.*, 335 U.S. 331, 339-40 (1948) (interpreting an earlier version of the *in forma pauperis* statute and noting that one need not "be absolutely destitute to enjoy the benefit of the statute").  A plaintiff, however, must support his request with an affidavit providing sufficient information, including a statement of all assets, showing his eligibility for *in forma pauperis* status.  28 U.S.C. § 1915(a)(1).  It is left to the discretion of the presiding judge to determine based on the information a plaintiff submits whether he is "unable to pay such fees." *See Brestle v. United States*, 139 Fed. Cl. 95, 103 (2018); *Fuentes v. United States*, 100 Fed. Cl. 85, 92 (2011) (citing *Waltner v. United States*, 93 Fed. Cl. 139, 142 (2010)).

In his IFP Application, Plaintiff represents that he is currently employed and earns $2,080.00 in monthly income.  ECF No. 2 at 1.  He owns a 2012 Chrysler 300, which he purchased with financing.  *See id.* at 2.  Plaintiff's monthly expenses total $1,499.42, which includes payments towards his rent, car, and insurance.  *See id.*  Plaintiff has no additional debts or persons dependent upon him for support.  *See id.*  Notably, Plaintiff left blank the portion of the application probing the amount of money Plaintiff possesses in cash or in a checking or savings account, making Plaintiff's full financial posture somewhat unclear.  *See id.*  After reviewing his application, the Court does not find that requiring Plaintiff to pay the filing fee would constitute a "serious hardship." *Fiebelkorn*, 77 Fed. Cl. at 62.  Plaintiff's income exceeds his regular expenses by roughly $600.00 per month.  Even assuming Plaintiff does not have cash on hand or maintain a checking or savings account, Plaintiff's annual income falls far above the 2021 Department of Health and Human Services Poverty Guidelines for a single-person family, which amounts to

$12,880.00. *See Annual Update of the HHS Poverty Guidelines*, 86 Fed. Reg. 7732, 7733 (Feb. 1, 2021). Based on Plaintiff's present economic status, the Court finds that he has not provided "evidence that paying the filing fee would . . . impose[] undue financial hardship" such that relief from payment under § 1915(a)(1) is warranted. *Chamberlain*, 655 Fed. App'x at 825; *see also Hale v. United States*, No. 15-903C, 2015 WL 5167791, at *3 (Fed. Cl. Sept. 2, 2015) (denying plaintiff IFP status where plaintiff held $273.00 in cash or in a checking or savings account, owned a vehicle, had an approximate monthly salary of $3,333.00, and reported no dependents); *Walls v. United States*, No. 05-533C, 2005 WL 6114552, at *2 (Fed. Cl. July 28, 2005) (denying plaintiff IFP status where plaintiff reported having $3,200.00 held in cash or in a checking or savings account, a monthly salary of $3,700.00, and no dependents); *cf. Moore v. United States*, 93 Fed. Cl. 411, 415 (2010) (granting plaintiff IFP status where "plaintiff's financial information demonstrate[d] an inability to meet existing financial demands, with very few liquid assets and an annual income level below the government established poverty line"); *Waltner*, 93 Fed. Cl. at 143 (same); *Fiebelkorn*, 77 Fed. Cl. at 63 (granting plaintiff IFP status where plaintiff "owe[d] a large debt despite her financial limitations, her net worth [was] negative, her monthly budget exceed[ed] her monthly income, and another federal program ha[d] deemed plaintiff eligible for assistance reserved for the poor"). Accordingly, the Court denies Plaintiff's IFP Application.

## B.    Plaintiff's Motion to Appoint Counsel Is Denied.

Plaintiff's Motion to Appoint Counsel acknowledges that he does "not have a constitutional or statutory right to appointed counsel;" however, he argues that the Court will benefit from appointing him counsel in light of "the factual and legal complexity of the case." ECF No. 11 at 1. Plaintiff also argues that appointing counsel will assist him in handling conflicting testimony, obtaining evidence that Plaintiff contends Defendant hid or withheld in his criminal proceedings,

and, more generally, investigating and presenting his claims.  *Id.* at 1-3.  Defendant "take[s] no position on [Plaintiff's] request and defer[s] to the Court as to whether to grant it."  Def.'s Response to Mot. to Appoint Counsel at 1, ECF No. 12.

"[I]n civil proceedings, 'the right to counsel is highly circumscribed, and has been authorized in exceedingly restricted circumstances.'"  *Pitts v. Shinseki*, 700 F.3d 1279, 1283 (Fed. Cir. 2012) (quoting *Lariscey v. United States*, 861 F.2d 1267, 1270 (Fed. Cir. 1988)).  And although 28 U.S.C. § 1915(e)(1) provides that the Court "may request an attorney to represent any person unable to afford counsel," only "civil cases that present an extreme hardship to petitioner" warrant the exercise of this discretionary power, *see Washington v. United States*, 93 Fed. Cl. 706, 709 (2010) (stating a court should exercise the power to appoint counsel only in "extreme circumstances," *id.* at 708).[2]  Petitioners facing "extreme hardship," thereby necessitating civil legal assistance, include those in civil cases facing "quasi-criminal penalties or severe civil remedies," *e.g.*, an indigent parent at risk of losing his or her child in a custody case or a party to a civil commitment proceeding.  *Id.* (citing, *e.g.*, *Lassiter v. Dep't of Soc. Servs.*, 452 U.S. 18, 30-32 (1981) (child custody); *Vitek v. Jones*, 445 U.S. 480, 496-97 (1980) (plurality) (civil commitment)); *see also Arnesen v. Principi*, 300 F.3d 1353, 1360 (Fed. Cir. 2002) (observing that

---

[2]  In a non-precedential decision, the United States Court of Appeals for the Federal Circuit, held that the Court of Federal Claims "has no statutory authority to appoint counsel" under § 1915(e) because it is not an Article III court and thus not "a court of the United States" to which that section applies.  *Kimble v. United States*, 25 Fed. App'x 926, 929 (Fed. Cir. 2001).  28 U.S.C. § 2503(d), however, provides that "[f]or the purpose of construing section[] . . .1915 . . . of this title . . . the United States Court of Federal Claims shall be deemed to be a court of the United States."  *Id.*; *see Washington*, 93 Fed. Cl. at 708 (noting that "the commentary in *Kimble* did not take into account the provisions of 28 U.S.C. § 2503(d)").  Moreover, without addressing *Kimble*, the Court of Appeals has more recently recognized the, albeit limited, power of the Court of Federal Claims to appoint counsel.  *See Wright v. United States*, 701 Fed. App'x 967, 971 (Fed. Cir. 2017) ("As the Claims Court correctly noted, . . . its power to appoint counsel in civil cases is limited.").

generally no right to counsel exists for indigent civil litigants where no potential for loss of personal freedom exists if action is lost (citing *Lassiter*, 452 U.S. at 27)).

The present case, in which Plaintiff seeks restitution from the United States government for the actions of officials and individuals in his criminal proceedings, involves neither the type of extraordinary circumstances nor extreme hardship contemplated in the exercise of the Court's power under § 1915(e)(1).  *See Omran v. United States*, 629 Fed. App'x 1005, 1008 (Fed. Cir. 2015) ("With only monetary compensation potentially at stake, there is no private interest, government interest or risk of erroneous decision here strong enough to overcome 'the presumption that there is a right to appointed counsel only where the indigent, if he is unsuccessful, may lose his personal freedom.'" (quoting *Lariscey*, 861 F.2d at 1270)); *Wilson v. United States*, 566 Fed. App'x 913, 916 (Fed. Cir. 2014) ("[W]here [plaintiff] seeks monetary damages against the [g]overnment, the Claims Court did not err by denying his request for the appointment of counsel."); *Jiron v. United States*, 118 Fed. Cl. 190, 198 (2014) ("Plaintiff's Complaint, alleging causes of action against various officials, employees, and judges . . . simply does not 'present an extreme hardship' sufficient to warrant appointment of counsel." (quoting *Washington*, 93 Fed. Cl. at 709)).  While Plaintiff seeks relief based on his contention that Defendant "wrongfully incarcerated" him for nearly two decades, the outcome of this action will have no bearing on Plaintiff's personal liberty.  Indeed, the absence of "extreme circumstances," such as a threat to Plaintiff's liberty, belies any call for the Court to appoint counsel in this case.  *See Lassiter*, 452 U.S. at 26-27.  For these reasons, Plaintiff's Motion to Appoint Counsel is denied.

### C.   Plaintiff Has Failed to Respond to Defendant's Motion to Dismiss.

Defendant's Motion to Dismiss argues that the Court lacks subject matter jurisdiction because adjudicating Plaintiff's claims would necessarily require the Court to scrutinize Plaintiff's

criminal proceedings in South Dakota as well as effectively overturn subsequent decisions rendered by the United States Court of Appeals for the Eighth Circuit affirming Plaintiff's conviction. ECF No. 9 at 10-11. Moreover, Defendant argues that Plaintiff fails to state a claim upon which relief can be granted. Defendant contends that Plaintiff's "bad man" claims are (1) estopped by issue preclusion (with respect to claims against the AUSA and the judge involved in his criminal proceedings), (2) not cognizable under the Fort Laramie Treaty due to issues of tribal membership (with respect to claims against the chief government witness and caregiver, to the extent these individuals are distinct), and (3) were never previously submitted to the Department of Interior (with respect to claims against the forensic interviewer). *Id.* at 11-14. Additionally, Defendant argues Plaintiff's claims fail because none of the wrongs alleged by him occurred on the Sioux reservation. *Id.* at 14-15.

Plaintiff's response to Defendant's Motion to Dismiss was due by February 15, 2021. As of the date of this Order, Plaintiff has failed to submit any response or to request an enlargement of time to file a response. Because Plaintiff filed a request to appoint counsel after Defendant filed its motion and before his response was due, it is conceivable that he presumed the deadline to respond was extended until the Court ruled on the appointment request. A deadline set by the Court's rules or by a court order, however, can be extended only by leave of court, *see* RCFC 6(b), consistent with the procedures set forth in RCFC 6.1. The Court, however, is mindful of Plaintiff's *pro se* status. *See Marshall v. Sec'y of HHS*, 127 Fed. Cl. 143, 145 (2016) ("pro se litigants are generally afforded some leniency in procedural matters"); *Lewis v. United States*, 31 Fed. Cl. 607, 611 (1994) (noting a "pro se plaintiff is accorded leniency by the court in matters of procedure" (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). Given the circumstances, the Court will allow Plaintiff to file his response to Defendant's Motion to Dismiss within 30 days of this Order.

**CONCLUSION**

Accordingly, for the foregoing reasons, the Court **ORDERS** that:

- Plaintiff's IFP Application is **DENIED**. By no later than April 29, 2021, Plaintiff shall pay the required $402.00 filing fee consistent with the instructions provided in RCFC 77.1(c). If Plaintiff fails to comply with this Order, this action will be dismissed without prejudice for failure to prosecute under RCFC 41(b);

- Plaintiff's Motion to Appoint Counsel is **DENIED**; and

- Plaintiff shall file a response to Defendant's Motion to Dismiss by no later than April 29, 2021.

**SO ORDERED**.

Dated: March 30, 2021                    _____*/s/ Kathryn C. Davis*_____
                                         KATHRYN C. DAVIS
                                         Judge